UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MICHAEL A. MCKNIGHT, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 00-CV-2607 (AK) |
| DISTRICT OF COLUMBIA, *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

On January 12, 2006, following the close of all the evidence in the jury trial, the Defendants renewed their motion for judgment as a matter of law on all claims against the District of Columbia, as well as the false imprisonment/false arrest claim and the intentional infliction of emotional distress claim against Defendant Officer Martin. The Court granted the Defendants' motion with respect to all constitutional claims against the District of Columbia, but denied the motion with respect to the IIED claim against the District. Additionally, the Court held that Plaintiff had withdrawn any claim for false arrest or false imprisonment claim against Officer Martin individually, rendering Defendants' motion moot with respect to this claim.[1]

However, the Court denied the Defendants' motion for judgment as a matter of law on the

---

[1] In his Third Amended Complaint, the Plaintiff raised a false imprisonment claim against both Officer Martin and the District of Columbia. (Dkt. No. 45, June 21, 2004.) However, in response to the Court's request for clarification, the Plaintiff notified the Court that he intended to raise the false imprisonment claim against the District but not against Officer Martin. (Notice of Claims, Dkt. No. 75, Jan. 5, 2006.)

IIED claim against Officer Martin. Following the Court's ruling, three claims remained: 1) the constitutional claim for excessive force against Officer Martin, 2) the common law IIED claim against Officer Martin and 3) the common law IIED claim against the District of Columbia. This Memorandum Opinion explains the bases for the Court's rulings.

## **Background**

Plaintiff's claims in this case arise out of a shooting that occurred in the course of a "buy/bust"[2] operation on the evening of Dec. 8, 1999. The Plaintiff raised claims of constitutionally excessive force and intentional infliction of emotional distress against Officer Martin and the District of Columbia. Plaintiff also raised a claim of false imprisonment against the District of Columbia alone.

With regard to Plaintiff's claim of excessive force, the parties agree that Defendant Officer Dexter Martin shot the Plaintiff Michael McKnight. The agreement ends there. The Plaintiff claims that he was an unarmed innocent bystander and that Officer Martin's use of deadly force was excessive and unjustified. According to the Plaintiff, he heard someone yell the word "gun," and saw people jumping out of a car, at which point he started running out of fear for his safety. According to the Plaintiff, as he was running across Hunt Place, NE, someone shot him in the back and he fell to ground. Plaintiff claims that as he was lying on the ground,

---

[2]A "buy/bust" operation is one in which undercover officers purchase drugs from a suspect. After the undercover officers identify the suspect, an arrest team - the "bust" part of the operation - moves in to arrest the suspect. Defendant Officer Martin was one officer in a four-person arrest team, which was one of multiple arrest teams on patrol in the area that evening.

Defendant Officer Martin came up to him, cursed at him and kicked him in the side.[3]

The Defendant Officer Martin claims that his use of deadly force was reasonable under the circumstances. According to Officer Martin, he saw the Plaintiff Michael McKnight standing on the sidewalk behind a tree, pointing a gun at the unmarked police car that was traveling slowly along Hunt Place in front of Officer Martin. Officer Martin testified that he ordered the Plaintiff to drop the gun. According to Officer Martin, Mr. McKnight lowered the gun, but didn't drop it. Officer Martin further testified that Mr. McKnight jogged slowly across Hunt Place, all the while disregarding Officer Martin's orders to drop the gun. Finally, according to Officer Martin, when Mr. McKnight reached the other side of Hunt Place, he turned and pointed a gun directly at Officer Martin, at which point Officer Martin shot him. Officer Martin denies kicking Mr. McKnight after he shot him.

Plaintiff also raised claims of false imprisonment and intentional infliction of emotional distress against the District of Columbia based on events that took place after District officers transported Mr. McKnight to the hospital. Detective Steve MacDonald, the officer in charge of investigating the shooting, testified that when he arrived at the scene, an ambulance had already arrived and was treating Mr. McKnight. Detective MacDonald testified that he ordered another District officer to accompany Mr. McKnight to the hospital. Detective MacDonald told this officer that Mr. McKnight was under arrest and instructed the officer to guard Mr. McKnight at the hospital.

The ambulance transported Mr. McKnight to Prince George's Hospital Center in

---

[3] Plaintiff's claim for intentional infliction of emotional distress against Defendant Officer Martin individually is based on this alleged conduct.

Maryland. The District concedes that while Mr. McKnight was at the hospital, he was handcuffed to his hospital bed and also kept under guard by a District officer. Plaintiff testified that his family and friends were prohibited from visiting him while he was under guard at the hospital.

Detective MacDonald further testified that after Mr. McKnight was placed under arrest, Detective MacDonald obtained an arrest warrant for Mr. McKnight. He sent the arrest warrant to the Prince George's County Sheriff's Office, which, at this point, had jurisdiction to detain the Plaintiff in Prince George's County. According to Detective MacDonald, the Prince George's County Sheriff's Office did not act on the arrest warrant for unknown reasons. After some period of time,[4] the District officer guarding the Plaintiff simply left. Mr. McKnight was hospitalized for approximately eight days. Some time after being discharged from the hospital, Mr. McKnight learned that there was an outstanding warrant for his arrest and he turned himself in to the police.

Plaintiff claims that the District's actions in detaining him in Prince George's County were without jurisdiction and constituted false imprisonment. The Plaintiff further claims that the District officer's actions in handcuffing him to a hospital bed amounted to intentional infliction of emotional distress for which the District is vicariously liable.

---

[4] The evidence was unclear as to whether the Plaintiff remained handcuffed and under guard for a period of a few hours or more than a day. Plaintiff was shot around 8:30 p.m. on Dec. 8, 1999. The arrest warrant was obtained at some point on Dec. 9, 1999. (Defs.' Ex. 17.) The request to the Prince George's County Sheriff's Office was also made at some point on Dec. 9, 1999. (Defs.' Ex. 18.)

**Discussion**

I.   Plaintiff's Claims Against the District of Columbia

A court may grant judgment as a matter of law against a party on any claim or defense if, after the close of all the evidence, the court determines that there is no legally sufficient basis for a jury to find for a party. Fed. R. Civ. P. 50; *see also Boodoo v. Cary*, 21 F.3d 1157, 1161 (D.C. Cir. 1994). The "court may not assess the credibility of witnesses or weigh the evidence." *Hayman v. Nat'l Acad. of Sciences*, 23 F.3d 535, 537 (D.C. Cir. 1994). Viewing the evidence in a light most favorable to the Plaintiff, and drawing every reasonable inference therefrom, *Coburn v. Pan Am. World Airways, Inc.*, 711 F.2d 339, 342 (D.C. Cir. 1983), *cert. denied*, 464 U.S. 994 (1983), the Court found that there was no legally sufficient basis for the jury to find for the Plaintiff on any of his § 1983 claims against the District of Columbia (Counts I, III & IV).[5]

The Court found, however, that there was sufficient evidence for a reasonable jury to find in favor of the Plaintiff on the common law intentional infliction of emotional distress claim against both Officer Martin and the District (Count VI). The Court submitted the IIED claims against Officer Martin and the District, and the excessive force claim (Count I) against Officer Martin to the jury.[6]

   *A.   Constitutional Claims*

The Plaintiff raised two constitutional claims against the District. First, the Plaintiff claims that the DC Metropolitan Police Department's (MPD) practices with regard to the use of

---

[5] Third Am. Compl., Dkt. No. 45, June 21, 2004.

[6] The Defendants did not move for judgment as a matter of law on the excessive force claim against Defendant Officer Martin individually.

force by its officers and investigation of use of force incidents were responsible for Officer Martin's use of excessive force. (Count I.) Second, the Plaintiff raised false imprisonment claims against the District of Columbia based on his detention in Prince George's Hospital, where he was handcuffed to his hospital bed. (Count III.)

It is well established that a municipality may not be held liable under § 1983 for the constitutional torts of its employees on a *respondeat superior* theory, but may be held liable for constitutional violations caused by the municipality's official policy. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978). Official policy is not limited to written policy approved through formal channels, but also includes those "persistent and widespread" practices "so permanent and well settled as to constitute a custom or usage." *Id.* at 691 *(citing Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)). Official policy may also encompass a single decision or act directed by an official with final decision-making authority. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-84 (1986); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123-32 (1988); *Triplett v. District of Columbia*, 108 F.3d 1450, 1453-54 (D.C. Cir. 1997).

      1.    <u>Count I - Excessive Force</u>

The Plaintiff raised two distinct theories in support of his excessive force claim against the District of Columbia. First, Plaintiff claimed that the District's police officers engaged in a pattern of excessive force. Second, Plaintiff claimed the District maintained an inadequate system of investigating use of force incidents, which led to Officer Martin's unnecessary use of deadly force against the Plaintiff.

With regard to Plaintiff's first theory, that the District effectively tolerated a pattern of excessive force by its officers, the Plaintiff could have supported this claim in any number of

ways, including statistical evidence, *Cox v. District of Columbia*, 821 F. Supp. 1, 15-16 (D.D.C. 1993), *aff'd*, 40 F.3d 475 (D.C. Cir. 1994), testimony of former or present employees, *Samples v. City of Atlanta*, 846 F.2d 1328, 1333-34 (11th Cir. 1988), expert testimony, *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 872-73 (2d Cir. 1992) (relying on combination of expert testimony and statistical evidence), or investigatory reports, *Gentile v. County of Suffolk*, 129 F.R.D. 435 (E.D.N.Y. 1990), *aff'd*, 926 F.2d 142 (2d Cir. 1991).  However, a plaintiff must introduce some evidence about other incidents of excessive force beyond the particular incident at issue in the case.  *See Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (single incident insufficient to establish municipal liability based on a pattern or practice); *Carter v. District of Columbia*, 795 F.2d 116, 123 (D.C. Cir. 1986) (finding evidence of approximately thirteen various other incidents of excessive force insufficient to establish a "pervasive pattern . . . of excessive force").  Here, the Plaintiff provided no such evidence.

Wendell France, an expert in police policy, practices and procedures in the area of use of force and investigations of use force incidents, testified on behalf of the Plaintiff.  Mr. France was Plaintiff's sole witness on the issue of the District of Columbia's policies and practices.[7]

---

[7] The only other evidence that the Plaintiff submitted for purposes of demonstrating a pattern or practice of excessive force was a Memorandum of Agreement (MOA) between the District of Columbia Metropolitan Police Department (MPD) and the United States Department of Justice (DOJ).  *See* Memorandum of Agreement (June 13, 2001), *available at* **http://www.usdoj.gov/crt/split/documents/dcmoa.htm.** The Court excluded the MOA on hearsay grounds. (Mem. Order at 4-5, Dkt. No. 80, Jan. 17, 2006, *nunc pro tunc* Jan. 9, 2006.)

The MOA is an agreement reached between the DOJ and the MPD following an investigation into all aspects of the MPD's use of force.  As part of the investigation, the DOJ reviewed reported use of force incidents during the period from 1994 through early 1999.  The DOJ issued investigative findings and recommendations.  The MOA outlines the reforms that the MPD agreed to adopt following the investigation.

It might have been possible for the Court to admit some or all of the factual findings of the investigation that was the basis for the MOA.  Rule 803(8)(C) provides a hearsay exception

While Mr. France testified that in his opinion Officer Martin's actions were inconsistent with District policy regarding the appropriate use of deadly force, Mr. France also testified that he did not know of any other specific incidents of excessive force by District Officers. Nor did Mr. France offer any statistical evidence to suggest that the District's officers routinely engaged in excessive force when making arrests. In fact, Mr. France offered no testimony at all about the use of force by District officers other than the Defendant Officer Martin. Because a municipality may not be held vicariously liable for the constitutional torts of its employees, *Monell*, 436 U.S. at 691, the Court granted Defendants' motion for judgment as a matter of law on the Plaintiff's claim that the District tolerated a pattern of excessive force by its police officers.

The Plaintiff's second theory, that the District's systemic failure to adequately investigate

---

for public records or reports containing "factual findings resulting from an investigation made pursuant to authority granted by law." Fed. R. Evid. 803(8)(C); *see also Gentile v. County of Suffolk*, 129 F.R.D. 435, 444-461 (E.D.N.Y. 1990) (discussing admissibility of factual findings from investigations of police departments in § 1983 municipal policy claims), *aff'd*, 926 F.2d 142 (2d Cir. 1991). The DOJ conducted the investigation pursuant to its authority under the Violent Crime Control & Law Enforcement Act of 1994, 42 U.S.C. § 14141. *See* Findings Letter re Use of Force by the Washington Metropolitan Police Department (June 13, 2001), *available at* http://www.usdoj.gov/crt/split/documents/dcmoa.htm (hereinafter "Findings Letter"). The public records and reports hearsay exception would therefore have been applicable to the Findings Letter.

Furthermore, the investigation "did reveal a pattern or practice of use of excessive force by MPD" during the years of 1994 to 1999. *Id.* The Plaintiff was shot in late 1999. Thus, some of the investigation's factual findings may well have been relevant to the Plaintiff's claim that District officers routinely engaged in excessive force. This is not to say that the Court would necessarily have admitted all or even some of the factual findings. However, the Court at least could have engaged in an assessment of the prejudicial and probative value of the investigation's findings, had the Plaintiff sought to introduce the Findings Letter.

The MOA, which was issued separately from the Findings Letter, was the only evidence relating to the DOJ investigation of the MPD that Plaintiff sought to admit. However, the MOA is only forward looking. It does not contain any of the factual findings on which the agreement is premised. While the Court recognizes that a jury might reasonably infer from the MOA the likelihood of previous problems with the use excessive force, the MOA itself is hearsay. Absent an applicable exception, the Court cannot admit it into evidence. Fed. R. Evid. 802.

incidents of force led to Officer Martin's unjustified use of force against the Plaintiff, is similarly unsupported by sufficient evidence for a reasonable jury to find in the Plaintiff's favor. A municipality may be liable under § 1983 for its failure to investigate incidents of force, and by extension, its failure to discipline officers for use of excessive force, when such failure amounts to deliberate indifference to the constitutional rights of persons within its jurisdiction. *See Cox*, 821 F. Supp. at 21 (District's "patently inadequate system of investigation of excessive force complaints" sufficient to support municipal liability for police officers' violation of plaintiff's rights); *see also Parker v. District of Columbia*, 850 F.2d 708, 712 (D.C. Cir. 1988) (municipal liability exists "when there is evidence of deliberate indifference manifest by systemic and grossly inadequate training, discipline, and supervision"); *Fiacco v. City of Rensselaer*, 783 F.2d 319, 326 (2d Cir. 1986) (city's systemic failure to investigate claims of excessive force sufficient to support municipal liability).

In order to establish that the District's practice of investigating incidents of force constituted deliberate indifference, the Plaintiff must first show that the alleged inadequacies in the District's investigation of use of force incidents amounted to a pattern - a course of conduct deliberately pursued by the city - not a single incident engaged in by an employee without policy-making authority. *See Parker*, 850 F.2d at 712; *Carter*, 795 F.2d at 122. Second, the Plaintiff must show that the District "'knew or should have known of the risk of constitutional violations' and failed to respond as necessary." *Byrd v. District of Columbia*, 297 F.Supp.2d 136, 139 (D.D.C. 2003) (*quoting Baker v. District of Columbia*, 326 F.3d 1302, 1307 (D.C. Cir. 2003)). Here, the Plaintiff provided no evidence in support of either.

The Plaintiff's expert, Mr. Wendell France, testified that the MPD's investigation of the shooting of the Plaintiff was inadequate. However, Mr. France offered no testimony regarding any deficient investigations of other incidents in which an officer was alleged to have used excessive force.[8] Even assuming that the District failed to properly investigate Officer Martin's

---

[8] Because it appeared that Mr. France's only testimony on the issue of inadequate investigations related to the investigation of the shooting of the Plaintiff, and not other incidents, the Court sustained Defendants' objection to further testimony by Mr. France on this issue on relevancy grounds. Mr. France's expert report was limited to an analysis of the specific incident between Mr. McKnight and Officer Martin. The report concludes that the MPD's investigation of the shooting of Michael McKnight was flawed. However, the report contains no statistical information about the District's investigation practice, nor does it contain any discussion of other specific investigations alleged to be inadequate. In fact, Mr. France's report contains no discussion at all of the District of Columbia's policies and practices with respect to investigating incidents of force by its officers. Mr. France's deposition testimony suffers from the same flaws. He testifies about the inadequacies of the MPD's investigation of this particular shooting, but provides no testimony regarding any other specific incidents of inadequate investigations or statistical evidence of problems with the MPD's investigation of use of force by its officers. (France Dep. at 90-106.)

Without some specific evidence, Mr. France's conclusory allegations that the District's investigation practices in 1999 were deliberately indifferent to the constitutional rights of civilians, (*id.* at 92-94), is insufficient to establish a pattern or custom. *Compare Cox*, 821 F. Supp. at 14-16 (finding municipal policy of "egregiously delayed investigations" of civilian complaints against police officers for using excessive force based on "extremely detailed statistical evidence" of backlog of hundreds of civilian complaints and average processing times of 2-3 years per complaint; statutory maximum was 30 day)*, with Carter*, 795 F.2d at 123 (evidence of approximately thirteen instances of similar misconduct was insufficient to demonstrate "pervasive pattern of police officer indulgence in the use of excessive force").

Moreover, even if the Court had allowed Mr. France to testify regarding the District's alleged practice of inadequate investigations, there was insufficient evidence to establish that inadequate investigations were "the moving force" behind Officer Martin's shooting of the Plaintiff. *Monell*, 436 U.S. at 694. In *Cox v. District of Columbia*, a case that also alleged municipal liability based on a pattern of inadequate investigations of use of force by District officers, Judge Green found that the District's patently inadequate system for investigating civilian complaints of excessive force caused the violation of the plaintiff's rights. 821 F. Supp. 1, 17-20 (D.D.C. 1993), *aff'd,* 40 F.3d 475 (D.C. Cir. 1994). However, unlike the instant case, the causal connection in Cox was clear.

The defendant officer in *Cox* had, without any provocation, severely beaten the plaintiff during a traffic stop. *Id.* at 3-5. At the time of the incident, a pre-existing complaint against the same officer had been languishing with the Civilian Complaint Review Board (CCRB) for

shooting of Mr. McKnight, this single incident alone is insufficient to establish a pattern of inadequate investigations.  *See Byrd*, 297 F. Supp. 2d at 139.

The Plaintiff did not submit sufficient evidence to legally sustain a judgment against the District of Columbia on either of his theories of municipal liability for Officer Martin's alleged use of excessive force.  The Court therefore granted Defendants' motion for judgment as a matter of law on Count I with respect to the District of Columbia.

2.      Count III - False Imprisonment

The Plaintiff raised claims of false arrest and false imprisonment against the District of Columbia based on the events that took place in the hospital after Plaintiff was shot.[9]  Plaintiff

---

approximately 18 months. *Id.* at 9-10. Notably, this initial complaint was filed shortly after the defendant officer had joined the MPD and was still employed on a probationary basis. *Id.* at 9. Had the CCRB timely processed the complaint, or even notified the MPD about the existence, it is unlikely he would have been retained as an MPD officer. *Id.* at 18-19.  Instead, the defendant officer's supervisors recommended that he continue with the MPD, "stating that they knew of no unbecoming conduct on his part." *Id.* at 10.

In contrast to the clear causal connection in *Cox*, there is no evidence from which a jury might infer that a system of inadequate investigations caused the alleged violations of the Plaintiff's rights.  Plaintiff's theory of the shooting essentially involves a mistaken identity and a trigger-happy officer.  According to the Plaintiff, Officer Martin mistook Mr. McKnight for the suspect who moments earlier had escaped the arrest team after selling drugs to the undercover member of the buy/bust operation.  Both Mr. McKnight and the suspect were wearing jeans and a dark coat with a hood.  According to the Plaintiff's theory of the case, Officer Martin saw the Plaintiff running, and, believing him to be the suspect, shot him to prevent his escape. Even assuming Plaintiff's version of events to be true, there is nothing to suggest that a deficient system of investigating incidents of force contributed to Officer Martin's willingness to shoot an unarmed suspect.

[9]Plaintiff originally raised separate claims for false arrest (Count II) and false imprisonment (Count III). (Second Am. Compl., Dkt. No. 22, July 31, 2002.)  Judge Sullivan dismissed the false arrest claim as duplicative of the false imprisonment claim, and interpreted the false imprisonment claim as alleging a due process violation arising out of Plaintiff's arrest and detention in Maryland and the unnamed District officer's actions at the hospital. (Mem. Op. and Order at 3-4, Dkt. No. 30, Jan. 23, 2003.)  Judge's Sullivan's ruling is the law of the case. *See Messinger v. Anderson*, 225 U.S. 436, 444 (1912).  The Court will therefore read Count III as

claims that the District lacked jurisdiction to continue to arrest and detain him in Maryland. The Plaintiff also claims that his detention in Prince George's hospital, where he was handcuffed to his bed and kept under guard by a District officer was a violation of Plaintiff's due process rights.

Because the District of Columbia can only be liable for constitutional violations caused by its official policy, *Monell*, 436 U.S. at 690-91, Defendants' motion for judgment as a matter of law on the false arrest/false imprisonment claims against the District must be granted. Even assuming that Plaintiff's arrest and detention in Maryland violated his constitutional rights, there is no legally sufficient basis on which a jury could find the District liable for the violation pursuant to an official policy. The Plaintiff did not allege that the District maintains either a formal written policy or an informal custom causing persons to be falsely arrested or detained. *Id.* The Court must assume, therefore, that the Plaintiff based his allegations of municipal liability on the conduct of Detective MacDonald, who ordered Plaintiff's continued arrest and detention.

A municipality may be liable under § 1983 for the constitutional violations caused by a single decision or act of an employee, if that employee is an official vested with final decision-making authority. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-84 (1986); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123-32 (1988); *Triplett v. District of Columbia*, 108 F.3d 1450, 1453-54 (D.C. Cir. 1997). If Detective MacDonald, who ordered Plaintiff's continued arrest and

---

a claim for false arrest & false imprisonment based solely on the District's actions once Plaintiff was transported to Maryland, and not as alleging false arrest without probable cause when Officer Martin shot the Plaintiff. This reading of Judge Sullivan's ruling is consistent with Plaintiff's most recent clarification of his claims, in which he raises false arrest & false imprisonment claims against the District, but not against Officer Martin individually. (Notice of Claims, Dkt. No. 75, Jan. 5, 2006.)

detention, had the authority to establish binding policy respecting arrests,[10] the District would be liable for any constitutional violations caused by his decisions on that particular issue. *See Pembaur*, 475 U.S. at 484-85 (finding municipal liability based on county prosecutor's instructions to Sheriff's Office ordering warrantless search of physician's office).

Defendants concede that Detective MacDonald told another District officer that McKnight was under arrest. Detective MacDonald instructed the officer to accompany Mr. McKnight in the ambulance and "not to let him go."  Detective MacDonald also testified that he was the officer who obtained the arrest warrant, subsequent to Mr. McKnight's arrest.  Finally, Detective MacDonald was the officer who attempted to transfer custody of Mr. McKnight to the Prince George's County Sheriff's Office.  However, the Plaintiff failed to submit any evidence demonstrating that Detective MacDonald has the authority to establish District policy regarding any aspect of arrests and detentions. *See Triplett*, 108 F.3d at 1453 (finding "supervisory officers" at D.C. correctional facility did not have final decision-making authority).  Therefore, the Court granted Defendants' motion for judgment as a matter of law on Count III, with respect to the District of Columbia.

> B.     *Common Law IIED Claim*

Plaintiff's claim for intentional infliction of emotional distress against the District is based on a *respondeat superior* theory of liability.  Plaintiff claims that Officer Martin kicked him after he had been shot, that this conduct was outrageous and that Officer Martin thereby intentionally or recklessly caused him severe emotional distress.  Plaintiff makes the same claim

---

[10] Whether an official has final decision-making authority is a question of state law. *See Praprotnik*, 485 U.S. at 124.

with respect to the District officer's conduct in handcuffing him to his hospital bed.

Unlike claims brought under § 1983, the District is vicariously liable for the common law intentional torts committed by its employees, when the employees are acting within the scope of their employment. *Wade v. District of Columbia*, 310 A.2d 857, 863 (D.C. 1973). The Defendants deny that Officer Martin kicked Mr. McKnight after he had been shot, but otherwise concede that both Officer Martin and the unnamed District officer who handcuffed Plaintiff to his hospital bed were acting within the scope of their employment. Therefore, if the jury finds that either Officer Martin's alleged kicking of the Plaintiff or the handcuffing of Plaintiff to a hospital bed constituted intentional infliction of emotional distress, the District will be liable as well.

Because the Court believes that a reasonable jury, given the facts in evidence, could find either course of conduct so outrageous as to be intolerable in a civilized community, the Defendants' motion for judgment as a matter of law on the IIED claim against the District of Columbia is denied.

II.     Plaintiff's Claims Against Officer Martin

Plaintiff raised two claims against Defendant Officer Martin. First, the Plaintiff claimed that Officer Martin's use of excessive force was unnecessary and unreasonable under the circumstances. (Counts I & IV, Third Am. Compl., Dkt. No. 45, June 21, 2004.)[11]  Second, Plaintiff raised a common law claim of intentional infliction of emotional distress against Officer

---

[11] Pursuant to Judge Sullivan's opinion interpreting Plaintiff's claim for assault and battery (Count I) as a "constitutional tort," the assault & battery claim and the unreasonable seizure claim merge into a single claim for excessive force. (Mem. Op. & Order at 2-3, Dkt. No. 30, Jan. 23, 2003.)

14

Martin individually. (Count VI, Third Am. Compl., Dkt. No. 45, June 21, 2004.) Plaintiff's IIED claim against Officer Martin is based on the allegation that after shooting him without justification, Officer Martin walked over and kicked him. Plaintiff claims that such conduct was outrageous, considering the circumstances, and that he suffered severe emotional distress as a result. Construing the evidence in a light most favorable to the Plaintiff, and drawing every reasonable inference therefrom, *Coburn v. Pan Am. World Airways, Inc.*, 711 F.2d 339, 342 (D.C. Cir. 1983), *cert. denied*, 464 U.S. 994 (1983), the Court held that a reasonable jury could find for the Plaintiff on his common law intentional infliction of emotional distress claim.

To succeed on a claim for intentional infliction of emotional distress, Plaintiff must "show (1) extreme and outrageous conduct on the part of the defendant which (2) either intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Larijani v. Georgetown University*, 791 A.2d 41, 44 (D.C. 2002). "The conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998)).

If Mr. McKnight was unarmed, as he testified and as the Court must assume for purposes of this motion, then Officer Martin was at best mistaken in his belief that Mr. McKnight was pointing a gun at him. At worst, Officer Martin shot the Plaintiff knowing he was unarmed, planted a gun, and then proceeded to kick the Plaintiff in the side. Construing the evidence in the light most favorable to the Plaintiff, a reasonable jury could find that kicking an unarmed young man, who was laying on the ground after having been shot without justification by the very police officers charged with protecting the community, is utterly untolerable in a civilized

society.  Defendants motion for judgment as a matter of law on Plaintiff's claim for intentional infliction of emotional distress against Officer Martin is denied.

Finally, to the extent Plaintiff intended to raise a claim of false arrest or false imprisonment against Officer Martin individually, the Court construes Plaintiff's "Notice of Claims" as withdrawing any such claim. (Dkt. No. 75, Jan. 5, 2006.)

For the foregoing reasons, the Court grants Defendants' motion for judgment as a matter of law with respect to the claims for excessive force (Count I) and false arrest/false imprisonment (Count III) against the District of Columbia, but denies the motion with respect to the intentional infliction of emotional distress claim against both the District and Officer Martin (Count VI).  An order consistent with this Memorandum Opinion is separately and contemporaneously issued on this _30th_ day of January, 2006, *nunc pro tunc*, Jan. 12, 2006.

_____/s/_____
ALAN KAY
UNITED STATES MAGISTRATE JUDGE